UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOY PARNES and BRIAN PARNES,
individually and on behalf of
S.P., a minor child,

      Plaintiffs,

v.                                  Case No.:

ORANGE COUNTY SCHOOL BOARD,

      Defendant.
_____/

## COMPLAINT FOR DAMAGES

      Plaintiffs, JOY PARNES and BRIAN PARNES, individually and on behalf of S.P., a minor child (collectively referred to as "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendant, ORANGE COUNTY SCHOOL BOARD, and hereby allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 over federal claims asserted by the Plaintiffs in this Complaint as they seek relief under the laws of the United States. Jurisdiction is also conferred pursuant to 42 U.S.C. § 12132 because certain claims brought by the Plaintiffs arose under the Americans with Disabilities Act (the "ADA").

2. Venue is proper based on 28 U.S.C. § 1391 because the acts giving rise to the claims presented in this lawsuit occurred within the boundaries of this District.

## PARTIES

3. Plaintiffs, JOY PARNES, BRIAN PARNES, and S.P., a minor child, are residents of Orange County, Florida.

4. Plaintiff, JOY PARNES, is the natural mother of S.P. and is a custodial parent and guardian of S.P.

5. Plaintiff, BRIAN PARNES, is the natural father of S.P. and is a custodial parent and guardian of S.P.

6. S.P. is a minor child twelve (12) years of age.

7. S.P. has been diagnosed with developmental and learning disabilities, including Attention Deficit/ Hyperactivity Disorder ("ADHD"), dyslexia, dyscalculia, dysgraphia, developmental venous anomaly, sensory processing disorder, expressive receptive language disorder, auditory processing disorder, developmental and cognitive delay, fine motor delay, and gross motor delay, in addition to bilateral hand tremors and febrile seizures. As a result, she is a qualified individual with disabilities under the definitions of the Rehabilitation Act, 29 U.S.C. § 794, and Section 504 and the Americans with Disabilities Act, Title II, 42 U.S.C. § 12131, et seq.

8. Defendant, ORANGE COUNTY SCHOOL BOARD (hereinafter referred to as the "Defendant" or "Board"), is the governing body for public schools in Orange County, Florida, with the authority to sue and be sued, and at all times relevant hereto, purported to be acting within the course and scope of its

2

authority, pursuant to Article IX, § 4 of the Florida Constitution, Fla. Stat. §§ 1001.41 – 1001.42 and further under color of state law.

9.  The Board is providing educational services to the general public and receives local, state and federal funding from the United States Department of Education for the education of disabled students in Orange County, Florida.  The Board is considered a public entity under 42 U.S.C. § 12131.

10. At all times and places described herein, the actions and/or inactions of the Board were undertaken, and/or not undertaken, by individuals who were the employees or agents of the Board, each of whom were, at the time acting, within the course and scope of their employment. As a result, the Board is directly liable, or vicariously liable for said actions and/or inactions.

## STATEMENT OF FACTS

11. At all time material hereto, S.P. had an Individualized Education Plan ("IEP") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.

12. In 2020, S.P. was in third grade at Bay Meadows Elementary School ("Bay Meadows"), where she had an individualized education program and qualified for special education services.

13. S.P.'s medical, developmental, and educational history was well documented by medical professionals, educators, and her parents even before S.P. entered Kindergarten.

3

14. From approximately March of 2020 to February 2021, the Board engaged in an ongoing practice of failing to provide S.P. with the appropriate aids and services necessary for S.P. to participate and receive the benefits of the Florida Public School system (as S.P. well deserves and is entitled to) and the Board discriminated against, *and even retaliated against*, S.P. and her family solely because of her disabilities.

15. From March of 2020 to February 2021, S.P. attended school at Bay Meadows virtually due to the COVID-19 pandemic since she was at higher risk of becoming infected.

16. Remote learning was particularly challenging for S.P. as a student with learning and developmental disabilities, however, these challenges were exacerbated by the actions and inactions of the Board and certain School District personnel, including but not limited to School Board Attorney, Sarah Koren, Esq., as explained below.[1]

17. Pursuant to 34 C.F.R. § 300.101 and Rule 6A-6.03028 of the Florida Administrative Code ("F.A.C.") a free and appropriate public education ("FAPE") must be available to all students residing in the state between the ages of 3 and 21. This education was deliberately and expressly denied to S.P. and her family.

---

[1] The relationship between the Plaintiffs and the Board did not turn contentious until School Board Attorney, Sarah Koren, Esq. became involved in S.P.'s education.

18. Pursuant to 34 C.F.R. § 300.17 and Rule 6A-6.03411, F.A.C., FAPE means special education and related services that are, among other things, provided in conformity with an IEP that meets the requirements of 34 C.F.R. §§ 300.320 – 300.324.

19. Each state must ensure that FAPE is available to any individual student with a disability who needs special education and related services, even though the student has not failed or been retained in a course or grade, and is advancing from grade to grade.

20. The Board had a continuing obligation to provide FAPE to students with disabilities, despite the transition from in-person teaching to remote learning as a result of the COVID-19 pandemic.

21. If a school district continues to provide educational opportunities to the general student population during a school closure, it must ensure that students with disabilities also have equal access to the same opportunities, including the provision of FAPE.

22. Therefore, if a state or school district decides that all students must be taught at home for public safety, the district must have a plan for special education services and accommodations for students with disabilities to ensure they have equal access to a free and appropriate public education even if learning is online or at home.

23. Starting in March 2020, the Board failed to provide S.P with a free and appropriate public education by failing to appropriately implement her IEP and

failing to ensure that her IEP was reviewed and revised as appropriate to address any lack of expected progress toward the annual goals and in the general education curriculum, which resulted in the child falling further behind in school.

24. The Board also discriminated against S.P. based on her disabilities by denying her the benefit of Board services, programs, and activities that were needed to comply with S.P.'s IEP and the requirements of the IDEA. The Board failed to provide S.P. with reasonable accommodations needed to implement her IEP during the COVID-19 pandemic and to meet her academic needs as a student with disabilities.

25. The Board knew or should have known that S.P. was not capable of self-directed learning based on her disabilities, especially as the Board was well aware of S.P.'s education and medical history.

26. Due to the Board's failure to provide S.P. with the necessary accommodations, S.P.'s grades began to fail for the first time in her academic career after the school switched to remote learning in March of 2020.

27. After switching to remote learning in March of 2020, JOY and BRIAN PARNES notified S.P.'s teachers and the Board numerous times that S.P.'s needs were not being met and that she was struggling to use the digital platform that the school was using at the time.

28. Nevertheless, the Board failed to provide S.P. with the reasonable accommodations needed for S.P. to have equal access to a free and appropriate public education.

29. For example, upon switching to remote learning, the Board failed to provide S.P. with assistive technology devices that she needed in order to navigate the school's digital platform.

30. Also, prior to COVID, the school provided S.P. with specialized equipment and supplies to accommodate her needs and assist with her learning. For instance, the school previously provided S.P. with hi-write paper to assist with her writing, manipulatives to assist with math, and hand weights to help treat her hand tremor. The Board failed to provide S.P. with these tools after switching to remote learning.

31. The Board also denied JOY and BRIAN PARNES the opportunity to participate in their child's education to the same extent that parents of children without disabilities are able to participate in their children's education.

32. The Board hindered JOY and BRIAN PARNES ability to communicate with S.P.'s teachers about their child's education.

33. For example, before the Board's attorney, Sarah Koren, Esq., became involved in S.P.'s education, JOY and BRIAN PARNES communicated freely with S.P.'s teachers about their daughter's academic progress and educational needs.

34. After Ms. Koren became involved, S.P.'s teachers suddenly stopped responding to phone calls and emails from JOY and BRIAN PARNES regarding S.P.'s

education. Upon information and belief, Ms. Koren advised S.P.'s teachers to cease communications with JOY and BRIAN PARNES and advised that the only form of communications could be through the school's administration.

35. This obviously impaired JOY and BRIAN PARNES' ability to assist their daughter with her assignments and prevented them from ensuring that the special needs of their child were being met.

36. The Board also unfairly discriminated against S.P. after an alleged incident that occurred in the school cafeteria in February of 2019.

37. Approximately three days after the incident occurred, the Board punished S.P for her alleged behavior during the incident by forcing her to sit in isolation during lunchtime (in front of the other students in the cafeteria and unlike other students involved in the incident).

38. The Board failed to take into account S.P.'s cognitive and development disabilities when determining how to appropriately handle the incident. Instead, the Board unfairly punished a special needs child in a manner that caused her to suffer severe emotional distress.

39. Furthermore, after the incident occurred, the Board forced S.P. to sign a statement regarding the incident that she was unable to read.

40. The Board also unfairly discriminated against S.P. after a second incident that occurred in the school cafeteria in February of 2020.

41. The incident stems from S.P.'s alleged response to bullying that occurred in the cafeteria that day.

42. The Board initially suspended S.P. for one day following the incident. However, the following day, the Board sent a letter stating that the punishment had been changed to a 10-day suspension and recommended expulsion.

43. Shortly thereafter, the Board changed their position again, stating that S.P. could return to school the following morning.

44. Again, the Board failed to take into account S.P.'s cognitive and development disabilities when determining how to appropriately handle the situation and unfairly discriminated against S.P. by imposing a 10-day suspension and recommending expulsion.

45. As matters with the Board's actions (and inactions) for the Parnes family became increasing worse and began to harm S.P.'s development and right to education, on or about August 31, 2020, Plaintiffs filed a Complaint (the "State Complaint") against the School Board with the Florida Department of Education Bureau of Exceptional Education and Student Services ("BEESS"), pursuant to Florida Administrative Code, Rule 6A-6.03311(5). A copy of the State Complaint is attached hereto as Exhibit "A". The State Complaint alleged that the Board violated federal and state laws pertaining to the provision of FAPE. *Id.*

46. Specifically, the State Complaint alleged that the Board failed to educate the S.P. appropriately and failed to develop a plan to implement the student's IEP since March 2020. *Id.*

47. On November 2, 2020, BEESS issued a written decision entitled a "Report of Inquiry" ("Report") that addressed the issues presented in the Plaintiffs' State Compliant.   A copy of the November 2, 2020 Report is attached hereto as Exhibit "B".

48. BEESS' Report of Inquiry concluded that the Board violated several federal and state regulations that implement the IDEA and mandated that the Board undertake certain corrective actions to address S.P.'s needs.[2] *Id.*

49. BEESS' Report of Inquiry found that the Board violated the requirements of 34 C.F.R. § 300.101 and the corresponding requirements of Rule 6A-6.03028, F.A.C. because the Board failed to make FAPE available to the student.   *Id.* Specifically, BEESS concluded that from March 30, 2020 to May 27, 2020:

   A. The Board failed to provide the student with specially designed instruction in reading and math at the established frequency.

   B. The Board failed to provide the student with specially designed instruction in social skills at the established frequency.

   C. The Board failed to provide occupational therapy as a related service in order to enable the student to attain the student's independent functioning goal.

---

[2] In cases such as this, where the Department of Education ("DOE") has found a failure to provide appropriate services, the DOE must have procedures in place to address the failure, including corrective action appropriate to address the needs of the student (such as compensatory services or monetary reimbursement) and to address the appropriate future provision of services for all students with disabilities. Fla. Admin. Code. R. 6A-6.03311(5)(b)(4).

D. The Board failed to report on the progress the student made toward meeting the student's curriculum and learning environment and social or emotional behavior goals at the established frequency.

50. Furthermore, BEESS found that the Board violated the requirements of 34 C.F.R. § 300.324 and the corresponding requirements of Rule 6A-6.03028, F.A.C. because the Board failed to ensure that the IEP Team reviewed and revised S.P.'s IEP, as appropriate, to address any lack of expected progress toward the annual goals and in the general education curriculum, and to address the results of the February 2020 reevaluation. *Id*.

51. BEESS' Report of Inquiry also ordered the Board to take certain corrective actions by the end of 2020, including but not limited to the following:

A. By November 13, 2020, the Board must convene an IEP team meeting to review the results of the most recent reevaluation and address any lack of expected progress toward the student's measurable annual goals and in the general education curriculum. In addition, the IEP team must develop a compensatory services plan. At a minimum, the plan must ensure the provision of a minimum of four weeks for the following:

   i. Supplemental specially designed instruction in reading and math;

   ii. Supplemental social skills instruction; and

   iii. Supplemental occupational therapy.

B. By November 20, 2020, the district must submit documentation as verification to the bureau to include a copy of the student's IEP, IEP team meeting notices and conference notes, and a copy of the compensatory services plan.

C. By December 4, 2020, the district must ensure that all relevant district and school-based staff are provided training on the following:

      i.  34 C.F.R. §§ 300.101 and 300.17 and Rules 6A-6.03028 and 6A-6.03411, F.A.C., regarding FAPE requirements; and

      ii.  34 C.F.R. § 300.324 and Rule 6A-6.03028, F.A.C., regarding review and revision of IEP requirements.

D. The Board must submit documentation as verification of the training to the bureau by December 11, 2020.

E. By May 28, 2021, and in no case later than one year after the issuance of this report, the district must submit documentation as verification to the bureau to include implementation of the compensatory services plan, such as logs or service sheets, and teacher and student attendance logs or sheets.

52. The Board deliberately failed to comply with the corrective actions ordered by BEESS in its Report of Inquiry.

53. Instead, the Board sought retaliation against the Plaintiffs for filing the State Complaint and attempted to appeal the adverse decision rendered by BEESS.

54. On December 16, 2020, the Board filed a Request for Expedited Due Process Hearing with the Division of Administrative Hearings ("DOAH"), which was intended to challenge the adverse decision rendered by BEESS in response to the Plaintiff's State Complaint. A copy of the DOAH Complaint is attached hereto as Exhibit "C".

55. The Defendant's administrative complaint disputed BEESS' findings of fact, conclusions, and corrective actions, as set forth in the Report of Inquiry, and sought review of the same.[3]

---

[3] The Defendant's administrative complaint was filed against the Plaintiffs and BEESS.

56. On or about December 18, 2020, the Board filed an appeal with the Fifth District Court of Appeal, challenging BEESS's findings in the Report of Inquiry that was rendered in response to the Plaintiffs' State Complaint. *See School Board of Orange County, Florida v. S.P., a minor, by and through her parents, J.P. and B. P., individually and as parents and next friends of S.P., BEESS, et al.*, Case No. 5D20-2672.

57. In other words, two days after the Board filed an administrative complaint with DOAH challenging BEESS' Report of Inquiry, the Board proceeded to file an appeal with the Fifth DCA challenging BEESS' Report of Inquiry on the same grounds alleged in the administrative complaint. This was yet another attempt to retaliate against the Plaintiffs for exercising their right to file a State Complaint under the procedural safeguards of the IDEA.

58. On February 2, 2021, DOAH issued an Order placing the case in abeyance pending resolution of the appeal before the Fifth DCA.

59. On February 10, 2021, the Fifth DCA entered an order dismissing the appeal for lack of jurisdiction.

60. Shortly thereafter, on February 24, 2021, DOAH entered an order dismissing the Board's administrative complaint for lack of jurisdiction.

61. DOAH found that neither the IDEA, the federal regulations implementing the IDEA, Florida Statutes, or the Rules under the Florida Administrative Code, permitted DOAH to reconsider the DOE's final decision on a state complaint.

62. DOAH's Order of Dismissal stated that "[i]n the absence of any authority granted by statute or rule, the undersigned declines to create the establishment of an appellate process at DOAH for state claim final decisions, and therefore, OCSB's Amended Complaint, when so construed, is due to be dismissed for lack of jurisdiction."[4]

63. Despite the fact that DOAH and the Fifth DCA rejected the Board's attempts to appeal BEESS's Report of Inquiry, the Board still failed to comply with its obligations under the Report of Inquiry.

64. The Board intentionally ignored BEESS' Report of Inquiry, which ordered the Board to take the corrective actions specified in the Report by the deadlines stated therein. Effectively, they deliberately denied S.P. the education she has a right to, discriminating against S.P.

65. As such, S.P. was forced to withdraw from Bay Meadows Elementary School in February of 2021 and to leave the Orange County School District, since the Board failed to provide S.P. with the services and accommodations she needed to receive FAPE.

66. As a result of the Boards actions and inactions, the Plaintiffs have incurred damages, attorney's fees, and costs.

---

[4] The Order of Dismissal that was entered by DOAH also noted that while the IDEA does permit a school district to request a due process hearing, said requests are typically confined to those issues expressly identified by statute or rule and the Board's administrative complaint failed to set forth an appropriate case or controversy with respect to S.P., as required under Fla. Admin. Code R. 6A-6.03311(9)(d)(5).

67. On February 2021, Plaintiffs, JOY PARNES and BRIAN PARNES, were forced to enroll S.P. in private school at the House of Academia.  The tuition for the House of Academia cost approximately $700.00 per month. Thereafter, the Plaintiffs enrolled S.P. in private school at Lindamood-Bell.  The tuition for Lindamood-Bell is approximately $82,000 - $89,000 for 19 months.

68. The Plaintiffs have retained the law firm of éclat Law, P.A. to represent them in this action, and are obligated to pay their attorneys their reasonable attorney's fees and costs.

69. Plaintiffs have satisfied all conditions precedent to bringing this cause of action, or such conditions have been effectively waived.

### COUNT I – Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 1213, *et seq.*

70. Plaintiffs hereby adopt and reassert the facts alleged in paragraphs 1 through 69 of this Complaint, which are incorporated herein by reference as if fully set forth herein.

71. This is an action against the Defendant for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1213, *et seq.* based on the Defendant's acts, omissions and resulting damages related to the Defendant's failure to accommodate S.P. and other discriminatory practices to be proven at trial.

72. Title II of the Americans with Disabilities Act is known as the "Prohibition Against Discrimination and Other Generally Applicable Provisions." 42 U.S.C. § 12131, et seq.

73. S.P.'s disabilities, including ADHD, dyslexia, dyscalculia, dysgraphia, developmental venous anomaly, sensory processing disorder, expressive receptive language disorder, auditory processing disorder, developmental and cognitive delay, fine motor delay, gross motor delay, bilateral hand tremors, febrile seizures, and other conditions substantially limit major life activities, including her ability to speak, communicate, and interact with others, and her ability to read, learn and concentrate. S.P.'s disabilities also limit her ability to perform manual tasks and her ability to participate in extracurricular activities. Based on the foregoing, S.P. is considered to be an individual with a disability under Title II of the ADA because she meets the essential eligibility requirements for Defendant's services at all times material hereto.

74. The Defendant's policies, practices, and procedures, particularly the actions and omissions described above, violated S.P.'s rights under Title II of the ADA, 42 U.S.C. § 1213, et seq., including discriminating against her on the basis of her disability.

75. For instance, the Defendant discriminated against S.P. and failed to provide her with reasonable accommodations by:

    A. Failing to appropriately implement her IEP and failing to ensure that her IEP was reviewed and revised as appropriate to address any lack of

16

expected progress toward the annual goals and in the general education curriculum, which resulted in S.P. falling further behind in school;

B. Denying S.P. the benefit of Board services, programs, and activities that were needed to comply with her IEP and the requirements of the IDEA;

C.  Failing to provide S.P. with the reasonable accommodations needed to implement her IEP during the COVID-19 pandemic and to meet her academic needs as a student with disabilities, and instead expecting her to engage in self-directed learning with little to no assistance;

D. Preventing an individual with knowledge or expertise regarding S.P. from attending her IEP meeting, despite JOY and BRIAN PARNES request, in violation of 34 CFR § 300.321(a)(6);

E. Unfairly punishing S.P. for the cafeteria incidents described above, in a manner that was intended to embarrass the child and that caused her to suffer severe emotional distress;

F.  Preventing JOY and BRIAN PARNES from participating in their child's education to the same extent that parents of children without disabilities are able to participate in their children's education; and

G. Prohibiting S.P.'s teachers from communicating with JOY and BRIAN PARNES about their child's education, which impaired their ability to assist S.P. with her assignments and prevented them from ensuring that the special needs of their child were being met.

17

76. The Defendant is excluding and/ or discriminating against S.P. solely on the basis of her disability.  Plaintiffs have suffered harm as a direct and proximate cause of the Defendant's acts and omissions described above and they seek a judgment against the Defendant for the damages they have incurred.

77. To provide an unfortunate example of the harm experienced, as the result of the Defendant's actions and inactions, S.P.'s educational and developmental progress has not only been hindered, but has also regressed and there are increasing concerns S.P. will be unable to reverse such regression.

78. Plaintiffs are also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 12205.

79. Defendant has waived sovereign immunity for situations where state actors, such as the Defendant, cause damages to persons for unequal treatment, discrimination, and the like pursuant to Florida Statute § 768.28(18) and applicable Federal law.

80. Further the Defendant is a public entity as defined by the ADA in that it is an instrument of state or local government. *See* 42 U.S.C. § 12131.

WHEREFORE, Plaintiffs demand judgment against the Defendant for all damages available to them under the Americans with Disabilities Act, 42 U.S.C. §1213 *et seq.*, together with such further and additional relief this Court fully deems just and proper under the law.

**COUNT II – Claim for Relief Under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

81. Plaintiffs hereby adopt and reassert the facts alleged in paragraphs 1 through 69 of this Complaint, which are incorporated herein by reference as if fully set forth herein.

82. This is an action against the Defendant for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. based on the Defendant's acts, omissions and resulting damages related to the Defendant's failure to accommodate S.P. and other discriminatory practices to be proven at trial.

83. The Board has and currently is providing educational services to the general public and is receiving federal financial assistance and is therefore, a covered entity within the meaning of the Rehabilitation Act.

84. S.P. is considered to be an individual with a disability under the Rehabilitation Act given that she suffers from ADHD, dyslexia, dyscalculia, dysgraphia, a developmental venous anomaly, sensory processing disorder, expressive receptive language disorder, auditory processing disorder, developmental and cognitive delay, fine motor delay, gross motor delay, bilateral hand tremors, febrile seizures, and other conditions that substantially limit major life activities.

85. As an individual with disabilities under the Rehabilitation Act, S.P. met the essential eligibility requirements for Defendant's services at all times material hereto.

86. The Defendant's policies, practices, and procedures, particularly the actions and omissions described above, violated S.P.'s rights under Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, including discriminating against her on the basis of her disability.

87. For instance, the Defendant discriminated against S.P. and failed to provide her with reasonable accommodations by:

A. Failing to appropriately implement her IEP and failing to ensure that her IEP was reviewed and revised as appropriate to address any lack of expected progress toward the annual goals and in the general education curriculum, which resulted in S.P. falling further behind in school;

B. Denying S.P. the benefit of Board services, programs, and activities that were needed to comply with her IEP and the requirements of the IDEA;

C.  Failing to provide S.P. with the reasonable accommodations needed to implement her IEP during the COVID-19 pandemic and to meet her academic needs as a student with disabilities, and instead expecting her to engage in self-directed learning with little to no assistance;

D. Preventing an individual with knowledge or expertise regarding S.P. from attending her IEP meeting, despite JOY and BRIAN PARNES request, in violation of 34 CFR § 300.321(a)(6);

E. Unfairly punishing S.P. for the cafeteria incidents described above, in a manner that was intended to embarrass the child and that caused her to suffer severe emotional distress;

F.   Preventing JOY and BRIAN PARNES from participating in their child's education to the same extent that parents of children without disabilities are able to participate in their children's education; and

G.  Prohibiting S.P.'s teachers from communicating with JOY and BRIAN PARNES about their child's education, which impaired their ability to assist S.P. with her assignments and prevented them from ensuring that the special needs of their child were being met.

88. The Defendant is excluding and/ or discriminating against S.P. solely on the basis of her disability.  Plaintiffs have suffered harm as a direct and proximate cause of the Defendant's acts and omissions described above and they seek a judgment against the Defendant for the damages they have incurred.

89. To provide an unfortunate example of the harm experienced, as the result of the Defendant's actions and inactions, S.P.'s educational and developmental progress has not only been hindered, but has also regressed and there are increasing concerns S.P. will be unable to reverse such regression.

90. Plaintiffs are also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action pursuant to 29 U.S.C. § 794a.

WHEREFORE, Plaintiffs demand judgment against the Defendant for all damages available to them under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, together with such further and additional relief this Court fully deems just and proper under the law.

## COUNT III – Retaliation

91. Plaintiffs hereby adopt and reassert the facts alleged in paragraphs 1 through 69 of this Complaint, which are incorporated herein by reference as if fully set forth herein.

92. This is an action against the Defendant for violating the prohibition against retaliation under the Americans with Disability Act, 42 U.S.C § 12203.

93. S.P. is considered to be an individual with a disability under Title II of the ADA given that she suffers from ADHD, dyslexia, dyscalculia, dysgraphia, a developmental venous anomaly, sensory processing disorder, expressive receptive language disorder, auditory processing disorder, developmental and cognitive delay, fine motor delay, gross motor delay, bilateral hand tremors, febrile seizures, and other conditions that substantially limit major life activities.

94. S.P. met the essential eligibility requirements for Defendant's services at all times material hereto, given that she is an individual with a disability under Title II of the ADA.

95. The Defendant is a public entity as defined by the ADA in that it is an instrument of state or local government. *See* 42 U.S.C. § 12131.

96. Further, the Defendant is a "local educational agency" as that term is defined by federal law and is a recipient of federal educational funds and as such, is bound by the non-retaliation laws provided for under 42 U.S.C.S. § 12203 of the ADA.

97. Plaintiffs filed a State Complaint against the School Board with BEESS in August of 2020, because the Board discriminated against S.P. based on her disabilities and violated federal and state laws pertaining to the provision of FAPE.

98. On or about November 2, 2020, BEESS issued a Report of Inquiry that addressed the issues presented in the Plaintiffs' State Compliant and concluded that the Board violated several federal and state regulations that implement the IDEA and mandated that the Board undertake certain corrective actions to address S.P.'s needs.[5]

99. As explained above, BEESS' Report of Inquiry found that the Board violated the requirements of 34 C.F.R. § 300.101 and the corresponding requirements of Rule 6A-6.03028, F.A.C. because the Board failed to make FAPE available to the student.

100. Furthermore, BEESS found that the Board violated the requirements of 34 C.F.R. § 300.324 and the corresponding requirements of Rule 6A-6.03028, F.A.C. because the Board failed to ensure that the IEP Team reviewed and revised S.P.'s IEP, as appropriate, to address any lack of expected progress toward the annual goals and in the general education curriculum.

---

[5] Plaintiffs filed another State Complaint against the School Board with BEESS in September of 2020, based on Sarah Koren's discriminatory conduct.  In the second State Complaint, Plaintiffs requested that Sarah Koren no longer be involved with matters related to S.P.'s education. On or about December 8, 2020, BEESS issued a Report of Inquiry concluding that the Board violated the requirements of 34 C.F.R. § 300.101 and the corresponding requirements of Rule 6A-6.03028, F.A.C. because the Board failed to make FAPE available to the student.

101. Instead of complying with the corrective actions ordered by BEESS in its Report(s) of Inquiry, the Board sought retaliation against the Plaintiffs for filing the State Complaints by filing frivolous lawsuits against the Plaintiffs.

102. On December 16, 2020, the Board filed a Request for Expedited Due Process Hearing with DOAH attempting to challenge the adverse decision rendered by BEESS in response to the Plaintiff's State Complaint.

103. Shortly thereafter, on or about December 18, 2020, the Board filed an appeal with the Fifth District Court of Appeal, which also attempted to challenge the adverse decision rendered by BEESS in response to the Plaintiff's State Complaint. *See School Board of Orange County, Florida v. S.P., a minor, by and through her parents, J.P. and B. P., individually and as parents and next friends of S.P., BEESS, et al.*, Case No. 5D20-2672.

104. The Board filed the administrative complaint with DOAH and the Fifth DCA appeal to retaliate against the Plaintiffs for exercising their right to file a State Complaint under the procedural safeguards of the IDEA.

105. The Board's administrative DOAH complaint and Fifth DCA appeal were both dismissed for lack of jurisdiction in February of 2021.

106. Since the DOAH complaint and Fifth DCA appeal were dismissed for lack of jurisdiction, the Board has engaged in multiple discriminatory acts against the Plaintiffs as alleged above in retaliation for filing the State Complaint against the Board with BEESS.

107. Furthermore, on September 13, 2020, the Board sent JOY and BRIAN PARNES a truancy letter falsely alleging that S.P. had been absent from school six (6) days in the month of August of 2020.  The truancy letter stated in relevant part that "[i]f it is determined that a pattern of truancy is being developed other consequences may be enacted: child study team referral, truancy court petition, or referral to law enforcement or the State Attorney[,] [and] [p]enalties, fines, and other consequences may result."

108. However, S.P. was present on three (3) of the days that she was marked absent.[6]

109.  Upon information and belief, the Board marked S.P. absent on days that she was present and sent JOY and BRIAN PARNES a truancy letter in retaliation for filing the State Complaint against the Board with BEESS in August of 2020.

110. By engaging in the discriminatory conduct alleged above, the Board violated the Americans with Disability Act, 42 U.S.C § 12203.

WHEREFORE, Plaintiffs demand judgment against the Defendant for all damages available to them under the Americans with Disability Act, 42 U.S.C § 12203, together with such further and additional relief this Court fully deems just and proper under the law.

---

[6] During August of 2020, S.P. was attending school remotely using the digital platform provided by the school.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully request a jury trial on all triable issues above.

## <u>RESERVATION OF RIGHT TO AMEND COMPLAINT</u>

Plaintiffs reserve the right to file amendments to this complaint as may be appropriate.

Respectfully submitted,

**éclat Law, LLP**

*/s/ Nikki Pappas Hudson*
Nikki Pappas Hudson, FBN 126355
nikki.pappas@eclatlaw.com
Jolynn M. Falto, FBN 1002743
jfalto@eclatlaw.com
Kevin K. Ross-Andino, FBN 66214
kevin.ross@eclatlaw.com
307 Cranes Roost Blvd, Suite 2010
Altamonte Springs, Florida 32701
Office: (407) 636-7004

*Counsel for Plaintiffs*