UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOY PARNES and BRIAN PARNES,

    Plaintiffs,

v.                                  Case No. 6:23-cv-854-JA-LHP

ORANGE COUNTY SCHOOL BOARD,

    Defendant.

## ORDER

Before the Court is the summary judgment motion of Defendant, Orange County School Board (the Board). (Doc. 52). Based on the Court's review of the parties' submissions, the motion must be granted.

## I. BACKGROUND

From 2019 until February 24, 2021, Joy and Brian Parnes's minor daughter, S.P., attended Bay Meadows Elementary School in Orlando, Florida. (Doc. 52 at 2). Bay Meadows is a public elementary school operated by the Orange County School District. (*Id.*). The Board is the governing body of the Orange County School District. (*Id.*). In 2019–2020, S.P. completed second grade, and she moved to third grade for 2020–2021. (*Id.*).

During S.P.'s enrollment at Bay Meadows, she received special education

and related services as a student with disabilities pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400. (Doc. 52 at 2). The Board prepared Individual Education Plans (IEPs) for S.P.'s benefit dated January 25, 2019; October 3, 2019; December 11, 2019; September 10, 2020; October 16, 2020; and February 9, 2021. (*Id.*). Those IEPs governed the Board's provision of special education and related services to S.P. as a student with a disability. (*Id.*). At the beginning of the 2019–2020 school year, the January 2019 IEP was in effect. (*Id.* at 3).

According to the Parneses, in February 2019 there was an incident in the school cafeteria involving S.P., and the Board "castigated" her by "forcing her to sit in isolation during lunchtime in front of the other students in the cafeteria." (Doc. 62 at 11 & n.5). And on February 24, 2020, there was another incident in the school cafeteria involving S.P. that initially resulted in S.P. receiving a ten-day suspension and being recommended for expulsion. (Doc. 52 at 4; Doc. 62 at 11 & n.5, 12). The Board asserts that during the second cafeteria incident, S.P. threatened to "kill" or "punch" other students. (Doc. 52 at 3–4). The Parneses were told about the incident and discipline by letter dated February 25, 2020. (*Id.* at 4). The same day, Bay Meadows' "threat assessment team" determined that S.P.'s threat was transient and approved S.P.'s "return to school before serving the full ten-day suspension, if a safety plan was put in place to ensure the affected student's safety." (*Id.*).

2

On February 26, 2020, Bay Meadows' Assistant Principal, Tami Hinton, emailed Ms. Parnes that S.P. could return to school early, on February 28th, if a safety plan was implemented, and invited Ms. Parnes to a meeting to develop that plan on February 27th.[1] (Doc. 52 at 4). Ms. Parnes did not attend the February 27th meeting, so no safety plan was put in place, and S.P. was not permitted to return to school the next day. (*Id.* at 4–5).[2] On March 3, 2020, Ms. Parnes did attend a safety plan meeting, and S.P. returned to school that day. (*Id.* at 5 (citing Doc. 51-3 ¶ 14)).

On March 10, 2020, Bay Meadows staff held a disciplinary team meeting,[3] "and determined that S.P.'s conduct was not a manifestation of [S.P.'s] disability for purposes of the IDEA." (Doc. 52 at 5 (citing Doc. 51-12 at 7)). The disciplinary team recommended that S.P. receive four counseling sessions with the school counselor to work on social skills instead of further discipline. (*Id.* (citing Doc. 51-3 ¶ 14 and Doc. 51-4 at 10)). The school counselor contacted Ms.

---

[1] "The purpose of a safety plan is to ensure the affected student's safety and the safety of others when a student returns from a suspension for threatening behavior." (Doc. 51-3 ¶ 11).

[2] While S.P. was not in school on Wednesday, February 26th; Thursday, February 27th; or Friday, February 28th, the Board states that S.P. only served two days of out-of-school suspension (on February 26th and 28th) before returning to school. (Doc. 52 at 5 (citing Doc. 51-3 ¶ 14 and Doc. 51-7 at 1)).

[3] After Ms. Parnes failed to appear for the February 27th meeting to implement a safety plan, Hinton sent Ms. Parnes an updated letter informing her that a discipline team meeting was scheduled for March 10, 2020. (Doc. 52 at 5 (citing Doc. 51-6 at 1)). The letter explained that the meeting would inform the Parneses about "S.P.'s 'rights and any possible consideration to continue the educational process within Orange County Public School/or [sic] other placements.'" (*Id.* (quoting Doc. 51-6 at 1)).

3

Parnes about the proposed counseling sessions. (*Id.* (citing Doc. 51-8 at 1)). Ms. Parnes told the counselor that she believed the incident was "'ridiculous' and that the provision of counseling services was 'beyond comical.'" (*Id.* (citing Doc. 51-8 at 1)).

In March 2020, due to the COVID-19 pandemic, all the Board's students began receiving educational services virtually and remotely. (*Id.* at 6). The Board says that it cancelled S.P.'s IEP review meeting set for March 25, 2020, due to the "abrupt transition to remote learning." (*Id.* at 5 (citing Doc. 51-12 at 7)). The Board tried to reschedule the IEP review meeting for April 6, 2020, but claims that the Parneses refused to meet virtually. (*Id.* (citing Doc. 51-12 at 7)).

According to the Board, after an IEP team meeting on September 10, 2020, Ms. Parnes "posted a derogatory comment regarding S.P.'s teacher." (Doc. 52 at 7 (citing Doc. 51-22 ¶ 10 and Doc. 51-30 at 4)). Ms. Parnes' "comment was brought to the attention of [Board] administration and the Office of Legal Services on September 11, 2020." (*Id.* (citing Doc. 51-22 ¶ 10 and Doc. 51-30 at 1)). The Board says that because of this comment, its lawyer told the Parneses' then-lawyer that all communication between the Parneses "and school staff would go through school administration." (*Id.* (citing Doc. 51-22 ¶ 10 and Doc. 51-30 at 1)). At the February 2021 IEP meeting, S.P.'s teacher noted that she was in communication with all of her students' parents weekly, including the Parneses, and that Ms. Parnes and her then-lawyer "expressed their

4

appreciation." (*Id.* (citing Doc. 51-9 ¶ 3 and Doc. 51-11 at 1)).

In August and September 2020, the Parneses filed two complaints with the Florida Department of Education Bureau of Exceptional Education and Student Services (BEESS), respectively alleging IDEA violations occurring from March 30 to May 27, 2020, and from August 10 through October 9, 2020.⁴ (*Id.* at 9 (citing Doc. 51-9 ¶ 5)). The Board "participated in the . . . investigation process and submitted substantial records demonstrating [its] compliance with its obligations to S.P. under the IDEA." (*Id.* (citing Doc. 51-9 ¶ 6)). But BEESS issued Reports of Inquiry (ROI) on November 2 and December 9, 2020, ordering the Board to provide S.P. compensatory education services.⁵ (Doc. 52 at 9 (citing Doc. 51-9 ¶ 6, Doc. 51-12, Doc. 51-13)).

On November 4, 2020, some of the Board's staff (including general counsel Amy Envall and Exceptional Student Education (ESE) director Tajuana Lee-Wense) met with two Florida Department of Education lawyers and BEESS's acting chief, Victoria Gaitanis, to discuss reconsideration of BEESS's findings.

---

⁴ The first complaint filed with BEESS is Case No. BEESS-2020-089-RES, and the second complaint filed with BEESS is Case No. BEESS-2020-096-RES. (Doc. 52 at 9 (citing Doc. 51-9 ¶ 5)).

⁵ The "compensatory education services" ordered by BEESS included: a minimum of four weeks of supplemental specially designed instruction in reading and math, supplemental social skills instruction, and supplemental occupational therapy; three hours of specialized instruction in English language arts; four hours of specialized instruction in math, three hours of social skills instruction; two hours of language therapy services; and one hour of occupational therapy services. (Doc. 51-12 at 11; Doc. 51-13 at 12).

(Doc. 52 at 10 (citing Doc. 51-9 ¶ 7)). During this meeting, Gaitanis advised that if the Board disagreed with BEESS's reconsideration determination, the Board had a right to file a complaint with the Division of Administrative Hearings (DoAH) to challenge the outcome. (*Id.* (citing Doc. 51-9 ¶ 7)). About two weeks later, Gaitanis emailed the Board that BEESS declined to change its findings and that "[i]f either party disagrees with this decision, they may file a due process complaint." (*Id.* (citing Doc. 51-22 ¶ 4 and Doc. 51-2 at 2–3)).

In December 2020, the Board filed a request for a due process hearing before the DoAH, challenging both ROIs. (*Id.* at 10–11 (citing Doc. 51-22 ¶ 5, Doc. 51-24, and Doc. 51-25)). Additionally, the Board challenged the ROIs by filing an administrative appeal with Florida's Fifth District Court of Appeal. (*Id.* (citing Doc. 51-22 ¶ 6 and Doc. 51-26)). The DoAH and the Fifth District Court of Appeal dismissed, respectively, the request for a due process hearing and the administrative appeal for lack of jurisdiction. (Doc. 52 at 11 (citing Doc. 51-22 ¶ 7, Doc. 51-27, and Doc. 51-28)). The Board did not take further steps to appeal the ROIs. (*Id.* (citing Doc. 51-22 ¶ 8 and Doc. 51-29)).

Thereafter, the Board's lawyer emailed the Parneses' lawyer offering twenty-four hours of compensatory education services. (*Id.* (citing Doc. 51-2 at 10–11)). The Parneses did not accept the offer, and the Board's lawyer wrote Ms. Parnes, requesting a meeting to discuss compensatory education services. (*Id.*). Ms. Parnes did not reply. (*Id.*). Lee-Wenze, the Board's ESE director,

emailed the Parneses to again offer compensatory education services to S.P. and a settlement agreement to memorialize the compensatory education plan. (Doc. 52 at 11 (citing Doc. 51-9 ¶ 8 and Doc. 51-14)). This email increased the offer of services to thirty-seven hours and requested a response by July 30, 2021. (*Id.* at 11–12 (citing Doc. 51-14)). This offer and the settlement agreement were also sent by certified U.S. mail. (*Id.* at 12 (citing Doc. 51-14 and Doc. 51-9 ¶ 8)). Ms. Parnes signed to indicate receipt of the letter and requested an extension to confer with her new lawyer about the offer. (*Id.* (citing Doc. 51-14)). Although the Board granted an extension, the Parneses never responded. (*Id.*).

The Board told BEESS of all efforts to comply with the compensatory education requirements in the ROIs. (*Id.* (citing Doc. 51-9 ¶ 9 and Doc. 51-15)). BEESS issued two notices of completion to the Board indicating that the Board had completed all corrective action items and closing the cases. (*Id.* (citing Doc. 51-9 ¶ 9 and Doc. 51-15)).

In May 2023, the Parneses filed this lawsuit against the Board asserting three claims: disability discrimination under Title II of the Americans with Disabilities Act of 1990 (ADA) (Count I); disability discrimination under the Rehabilitation Act (Count II); and retaliation under the ADA (Count III). (Doc. 1 at 15–25). The Board moves for entry of summary judgment on all three counts. (Doc. 52).

## II. LEGAL STANDARD

Summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material fact and the" moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the [C]ourt—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

At the summary judgment stage, the Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "In essence, . . . the inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In deciding whether a genuine dispute of material fact exists, the Court views the evidence and draws all factual inferences in the light most favorable to the nonmoving party and likewise resolves any reasonable doubts in favor of the nonmoving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

## III. DISCUSSION

Primarily, the Board moves for summary judgment arguing (as it previously did in its motion to dismiss) that the Parneses failed to exhaust administrative remedies. (*See* Doc. 52 at 13–24). The Board also argues that the claims for disability discrimination and retaliation fail as a matter of law. Because the Court agrees with this second argument, it does not address the issue of administrative exhaustion.

### A.   Disability Discrimination

Discrimination claims brought under Title II of the ADA are analyzed under the same legal standards as discrimination claims brought under the Rehabilitation Act. *See Christmas v. Nabors*, 76 F.4th 1320, 1333 (11th Cir.

9

2023). To establish a claim for disability discrimination under Title II of the ADA and the Rehabilitation Act, Plaintiffs must show that (1) the individual who suffered the discrimination "is a qualified individual with a disability" and (2) "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and that (3) "the exclusion, denial of benefit, or discrimination was by reason of the . . . disability." *Id.* (quoting *J.S. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017)). And because this case arises in the education context, Plaintiffs must also establish more than the defendant's mere failure to provide a free and appropriate public education (FAPE). *See J.S.*, 877 F.3d at 985–86. Plaintiffs must also show "some bad faith or gross misjudgment by the school or that [the student] was discriminated against solely because of [her] disability." *E.W. v. Sch. Bd. of Miami-Dade Cnty.*, 307 F. Supp. 2d 1363, 1371 (S.D. Fla. 2004) (citations omitted); *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1364 (N.D. Ga. 2005). Finally, to prevail on their claim for damages under the ADA, Plaintiffs must establish intentional discrimination, which can be shown by the deliberate indifference of a school official who had actual knowledge of the discrimination and the authority to address the discrimination but failed to do so. *J.S.*, 877 F.3d at 987.

The Board argues that the Parneses have not provided any evidence of intentional discrimination in this case. (Doc. 52 at 26). Although the Parneses

argue that "the record facts alleged demonstrate gross misjudgment and bad faith by the" Board, (Doc. 62 at 12), they have failed to produce any evidence supporting their discrimination claims. The Parneses argue that the complained-of discrimination arises from the Board violating the IDEA and unfairly punishing S.P. for the cafeteria incidents. (Doc. 62 at 10, 11, 12). But the Parneses have not identified how the IDEA violations amount to intentional discrimination. As the Board argues, the Parneses must show more than the denial of a FAPE for the violation to constitute discrimination. (Doc. 27 at 10; Doc. 63 at 7 (quoting *J.S.*, 877 F.3d at 985–86)). And the Parneses have not produced any evidence that would allow a reasonable jury to conclude that the Board did not seek "in good faith to provide an appropriate education for" S.P. (Doc. 63 at 7 (quoting *C.P. v. Leon Cnty. Sch. Bd.*, No. 4:03CV65, 2005 WL 6074568, at *4 (N.D. Fla. Aug. 27, 2005)).

For example, the Parneses fail to present evidence creating a genuine issue of material fact as to whether the Board prohibited communication between the Parneses and S.P.'s instructional staff. (Doc. 52 at 28). The Board's evidence shows that after Ms. Parnes made a derogatory post regarding a teacher, the Board required that communication between Ms. Parnes and instructors include Bay Meadows' administration—an action that does not demonstrate bad faith. (*Id.* ¶ 7; Doc. 51-22 ¶ 10; Doc. 51-29 at 90; Doc. 51-30). And after Bay Meadows' administration became included in communications,

11

the Parneses had three additional IEP meetings. (*Id.*; Doc. 51-9 ¶ 3; Doc. 51-11; Doc. 51-30). Thus, the Parneses have not shown that the Board's purported IDEA violations are a violation of the rehabilitation Act or ADA. (*Compare* Doc. 63 at 7 (quoting *C.P.*, 2005 WL 6074568, at *4 and citing Doc. 52 at 24–31), *with* Doc. 62 at 12–15 (relying upon allegations and unspecific record citations to attempt to establish the Board's bad faith or gross misjudgment)).

Moreover, the cafeteria incidents (alone or in combination with the purported IDEA violations) do not show that the Board intentionally discriminated against the Parneses. The first cafeteria incident was in February 2019, and the Parneses' Complaint (Doc. 1) was filed on May 9, 2023—more than four years later. (Doc. 52 at 29). The Parneses do not refute the Board's argument that a four-year statute of limitations applies and precludes the first cafeteria incident from giving rise to claims for discrimination. (Doc. 28 at 11; *id.* (citing *Karantasalis v. City of Miami Springs*, 17 F.4th 1316, 1320 (11th Cir. 2021))). Thus, as the Board argues, the first cafeteria incident cannot serve as the basis for the Parneses' discrimination claims.

And the Parneses have not produced any evidence that would allow a reasonable jury to conclude that S.P.'s punishment for the second cafeteria incident was unfair or discriminatory. The Board produced evidence that S.P. was punished for threatening to "kill" or "punch" other students at lunch. (Doc. 51-5 at 1; Doc. 51-6 at 1; Doc. 51-29 at 10; Doc. 52 at 29). S.P.'s threat was

classified as a level IV incident, consistent with the Student Codes of Conduct that the Board produced. (*Id.*; Doc. 51-4 at 3, 8–9, 11, 27, 29, 49–50 (classifying as level IV incidents, *inter alia*, threats, battery, and physical attack)). S.P.'s punishment for the second cafeteria incident is consistent with punishment for level IV incidents, which includes expulsion and a ten-day suspension from school. (*Id.*). Also, the Parneses fail to produce evidence that rebuts the Board's recounting of the second cafeteria incident.

Accordingly, the Parneses have not presented evidence creating a genuine issue of material fact as to whether the Board intentionally discriminated against them. Thus, the Board is entitled to summary judgment in its favor on Counts I and II (discrimination in violation of the ADA and the Rehabilitation Act).

### B. Retaliation

To establish a claim for retaliation under the ADA, Plaintiffs must show that (1) they were engaged in a protected activity under the ADA, (2) the Board knew of the protected activity, (3) the Board then took adverse action against Plaintiffs, and (4) there was a causal connection between the protected activity and the adverse action. (Doc. 52 at 31; Doc. 62 at 17 (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013))). The Board argues that Plaintiffs' retaliation claim fails on the third, "adverse action" element. The Court agrees.

Plaintiffs primarily contend that the Board took adverse action against them when it appealed the ROIs to the DoAH and the Fifth District Court of Appeal. (Doc. 62 at 16). For legal action to constitute an adverse action, "the lawsuit or counterclaim [must have been] filed with a retaliatory motive and . . . lack[ ] a reasonable basis in fact or law." *Smith v. Miami-Dade County*, 621 F. App'x 955, 960 (11th Cir. 2015) (citations omitted). A legal action is not baseless in fact or law merely because one party alleges that the other "will ultimately lose on the merits" or because a party's appeal is dismissed. *Id.*; *see Serra v. Shriners Hosps. for Child., Inc.*, No. 8:18-CV-2682-T-33AAS, 2019 WL 1558751 (M.D. Fla. Apr. 10, 2019) (noting that dismissal of "counterclaims would not necessarily render them baseless" (citing *Ergo v. Int'l Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007))); *accord Stewart v. Jones Util. & Contracting Co.*, 806 F. App'x 738, 742–43 (11th Cir. 2020) (finding a lawsuit can qualify as retaliation "so long as the lawsuit was filed with a retaliatory motive and was lacking a reasonable basis in fact or law"). The Board persuasively argues that the Parneses have failed to present evidence creating a genuine issue of material fact regarding whether it had a good faith basis for filing challenges to BEESS's orders in the actions initiated by the Parneses. (Doc. 52 at 31–34; Doc. 63 at 7).

In an attempt to avoid summary judgment, the Parneses rely on the February 25, 2021 transcript of the Board's executive session, but at most, the cited portions of the transcript show that the Board was determining how to

best resolve the ROIs because it viewed the ROIs as incorrect. (*See, e.g.*, Doc. 51-2 at 5–6; Doc. 51-29 at 41). And the Board's view that the ROIs were incorrect, and thus that there was an arguable basis to appeal, is reflected in emails between the Board and BEESS after the first ROI. (Doc. 51-24). These emails, along with the transcript, reflect that the Board took two appeals not as retaliation but because the appeal process was unclear. (*Id.* at 3; Doc. 51-29 at 71–84). And the Parneses do not cite or provide record evidence that creates a genuine issue regarding whether the Board's appeals had a reasonable basis in fact or law.

In sum, Plaintiffs' retaliation claim fails on the adverse action element. Accordingly, the Board is entitled to summary judgment on the Parneses' retaliation claim.

## IV. CONCLUSION

For the reasons explained above, it is **ORDERED** that the Board's motion for summary judgment (Doc. 52) is **GRANTED**. The Clerk is directed to enter a judgment providing that Plaintiffs take nothing from Defendant on their claims in this case and thereafter, to close this case.

**DONE** and **ORDERED** in Orlando, Florida, on September 25, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record